All right, we'll please be seated. We'll move into our next case here. Gomez-Ruotolo v. Garland Mr. Melo, please proceed. Thank you, Your Honor. May it please the Court, Daniel Melo with my co-counsel, Mr. Peter Alfredson, on behalf of Mr. Gomez-Ruotolo. Your Honors, the Board failed to apply the proper categorical approach regarding Mr. Gomez-Ruotolo's two convictions, and in so doing, failed to hold the Department of Homeland Security to its high burden of clear and convincing evidence that he had, in fact, been convicted of two crimes involving moral turpitude. Regarding his electronic solicitation conviction, that Virginia statute does not have the requisite mens rea that this Court has repeatedly held as necessary to define a crime involving moral turpitude, and regarding his attempted sexual battery conviction, that lacks the requisite act that is so vile and depraved as to shock the public conscience. Turning first to the electronic solicitation conviction, it's clear on the plain language of the statute, in conjunction with this Court's precedent, the BIA's own solicitation conviction, that Mr. Gomez-Ruotolo was convicted of two crimes involving moral turpitude. But the long precedent, and even Virginia's cases, all point to the fact that the phrase, the operative phrase there, and the one that's issued here in this case, reason to know, is synonymous with criminal negligence. And if it is criminal negligence is all that is required for Virginia to obtain a conviction for this statute, then it simply cannot be a crime involving moral turpitude. Counsel, on that point, you know, there's maybe some open issues about what that language means. Kilpatrick, I think, or maybe another one says there's some open issues. You say it's criminal negligence. Maybe right. I grant you that particular language, for the sake of this question at least, is open. But even if that particular language about the age disparity with the victim is negligence, this statute still requires it to be convicted knowing an intentional conduct, and then it lists four types of conduct with respect to a child. So whereas the Nunez case, the whole aspect of it was negligence. Here, to obtain a conviction, a criminal defendant must engage in intentional and knowing conduct regarding a child in four ways that I won't repeat. Why isn't that enough to take us out of Nunez? Certainly, Your Honor. So there's a few reasons. The first is that, as the Supreme Court has held, the mens rea actually has to attach at each stage of the elements of the crime. And so while the knowing piece certainly attaches to the act of solicitation and maybe even to the act of sexually soliciting, that know or reason to know is pivotal because what makes the statute criminal is that we're talking about a minor. So both Kilpatrick 1, 2, and Stoltz, all from the Virginia courts, hinged in part on that portion of the statute because in those cases the defendant was either saying that that phrase was constitutionally vague or that evidence pointed otherwise. And so, for example, in Stoltz, the Virginia Supreme Court looked and said, okay, we don't know if we have enough to actually say that the defendant here knew in fact that this individual was a minor, but there's enough here to suggest he had reason to believe. And so in that case, right, the entirety of the conviction hinged on the fact that there were some facts that gave the defendant there constructive notice that he was speaking to a minor. So I don't think that the government's arguing that sexual solicitation, even in the means enumerated in the statute, are necessarily crimes involving moral turpitude. And instead, again, what the entirety of that statute hinges on in terms of its criminality and for purposes of this decision, the moral turpitude piece is whether or not that mens rea, reasons to believe, necessarily rises to the level of moral turpitude. And in that sense, it actually squares plainly with this court's finding in both Nunez-Vasquez and in Sotniaku where that should have known language, very similar language, was held to be insufficient to define crimes involving moral turpitude in both of those contexts. Moreover, we find very similar language that the BIA has already interpreted in its own decision making. This identical phrase, reason to believe, as being insufficient to define aggravated crimes. I wanted to ask you about the BIA's precedent, because the BIA has a line of decisions exactly about this topic that you don't appear to have taken head on. They have Jimenez-Cedillo, right, that was cited in this opinion and that they've reaffirmed multiple times where they address specifically in the case that the defendant was speaking to. But in the context of soliciting minors, here's our approach to mens rea. And you're instead making kind of a tangential attack based on the way we or the BIA have addressed mens rea in different contexts. But what's your position taking that line of precedent head on? I don't see anywhere that you've asked us not to defer to that or you've said that's unreasonable. What gives? Why aren't you approaching kind of by the direct route? Certainly, Your Honor, and we will concede up front that neither us nor the government spent any significant time in the briefing discussing the line of cases leading up to Jimenez-Cedillo. In part because this court actually sent Jimenez-Cedillo back. Yeah, and then the BIA reaffirmed it and said, we sent it back because they had changed position. And then it went back and they said, yep, we've changed our position and we still think that this is right. And then the BIA cited that in your client's case, and that was the reason the BIA decided the way it did in this case. Correct, and to the extent that the BIA actually relied on Jimenez-Cedillo, it was plainly wrong. As Jimenez-Cedillo, by its own terms, explicitly in its decision says that it will not apply retroactively, being a 2010 decision where this conviction is a 2019 one. But they said this has always been our position, right? They said it's always been the case that if you knew or should have known that this person was a minor, that that's enough. We're also now going to draw this new special line that has to do with your age and how your age relates to the age of the victim. Correct, and so I guess if I understand your Honor's question, why doesn't Silva-Trevino and some of the predecessors to the Jimenez-Cedillo apply here? And to put it simply, your Honor, the exact same logic applies here as there. And so this court is bound by its own precedent, not the BIA's precedent. And this court has repeatedly said that criminal negligence does not rise to the level of moral turpitude. And the BIA has not done anything with Silva or anything subsequent to that until it gets to Jimenez-Cedillo and says, actually, we're going to throw Manzrella out of the door entirely and just say that any crime in this context is a crime involving moral turpitude. Well, they also talk about not just know or should have known, because that wouldn't cover what actually happened here. Now, I know we're talking about a categorical approach, but the reason that Virginia has reason to believe is because it's a crime to act with the intent to solicit a child, even if you're actually soliciting an undercover cop, right? Which is what happened here. And that's what the Virginia statute covers. It's reason to believe you're soliciting a child and you act on that knowledge, that intent. So why doesn't that distinguish us from the know or should have known sort of a negligence idea that, well, you should have known it was a child. But Virginia says we have reason to believe, and their cases point out, here are all the reasons that this particular defendant had to believe or not believe that this person was a child, even though they were, you know, secretly an officer. I hesitate to speculate exactly what Virginia's purpose was, but I do think that the language, again, points to the fact that Virginia wanted prosecutors to be able to convict someone, not just based on their subjective knowledge, and that's what Stoltz talks about, but also on a constructive notice or an objective, reasonable, prudent person basis, right? And I point the court, for example, to the Ducharme case from the Court of Appeals, where it pointed to a solitary fact of saying you had some indication, right, that this person was a minor, and all of this is happening electronically. Therefore, that's enough. That solitary reason is enough to establish a reason to believe, regardless of what you actually thought happened. Or regardless of what you actually thought the individual's age was. But even if this court, and sorry, on a final note on Silva Trevino, to the extent that the court isn't convinced by our arguments this morning, it nevertheless, as it found in Amaya v. Rosen, nevertheless has an obligation to take up that line of cases to see whether or not they can be squared under Chevron, with this court's own precedent regarding the minimum requisite mens rea in an individual case for an individual CIMT. Pivoting to the attempted sexual battery statute, there, once again, no matter how the government slices up the statute, the fact remains that there simply is not the minimum necessary conduct here to raise something to the level of a crime involving moral turpitude, or as the BIA has put it, an act that is so violent, depraved, that it shocks the public conscience. Mr. Melo, I know you can make some creative arguments with respect to the statute, especially one that is divisible like the attempted sexual battery. But when I looked at what the convictions were, electronic solicitation of Amaya, attempted sexual battery of a minor, and I say, are they turpitudinous, are they morally turpitudinous? Of course they are. I mean, it just is so intuitive that there are certain things that are so intuitive that a lawyer's arguments can't get around them. And of course these are morally turpitudinous. What else could they possibly be? It's impossible to take a paintbrush and just whitewash this stuff. It just is. You can approach it through mens rea, you can approach it through the actus reus, pretty degrading of human dignity. I don't know how you can solicit a minor negligently. A solicitation of a minor? How do you solicit someone negligently? I don't get it. And how do you sexually assault or batter somebody, force intimidation, threaten, ruse? How do you do that negligently or gross negligence? Both of these statutes are describing very purposeful behavior. And so I come back to it. Woody Guthrie always said, anybody can make something complicated, but it takes a real genius to make it simple. I'm far, far from being somebody who would merit that status in Woody Guthrie's eyes, but when I looked at these statutes, and somebody's abusing, battering, soliciting a minor child, and I'm supposed to vote that that's not morally turpitudinous, I can't imagine it. I mean, I'm having a hard time thinking of anything worse or any category of individual that Congress would want to be here. I mean, you put it to Congress, put it out on the street, to the person on the street, to whether soliciting a minor or battering a minor sexually, and being convicted of the same? What could it possibly be other than morally turpitudinous? And in that normal deference to the board, to our Mohammed precedent, everything we can go at it very legalistically, I would go through step by step, but what in the world could this possibly be other than a morally malign act? Your Honor, I have about 40 seconds left, so I would ask to take a little bit of time to answer. You've got the last word. Go ahead. So, regarding the intuitiveness of a statute and its moral turpitudinousness, if you will, Your Honor, the categorical approach necessarily eschews conduct and specific fact-based inquiry, and instead we look to the minimum conduct in the statute. And this Court held in Ramirez that it requires an intent to achieve an immoral result or a willful disregard of inherent and substantial risk that an immoral act will occur. So if we stop at reading just the top line of a statute, I agree, it would be hard to float that question to anyone and say, do you think the moral turpitudinousness, that this is a CIMT because this is what the top line of the statute says. But in engaging in the categorical approach, looking to the minimum conduct, again, in the electronic solicitation case, someone could be convicted under the Virginia statute, regardless of whether or not they knew they were speaking to a minor, as long as the prosecution can point to one or two objective facts that say that they should have known better and we don't care what they actually knew. And then on the sexual battery piece, we're talking about an attempted sexual battery, so not even on a completed offense. And regardless of which subsection we're looking at, for example, under 3 and 4, right, the custodial relationship, say, between a jailhouse staffer and someone under their care. You're talking about the attempted sexual battery. I'm sorry? You're talking about the attempted sexual battery? Yes, Your Honor. Well, why doesn't the indictment clear up the divisibility problem? The indictment simply doesn't clear up the divisibility problem, in part because the language simply does not map on to the sexual battery. Does the indictment say that he was exercising authority over a prisoner or a parolee? No, Your Honor. Then doesn't it clear it up, right? I mean, those are the only two other options. Either it falls under subsection, like Roman at 1, or he's a jail guard, right? And we know it didn't allege the latter. Actually, Your Honor, because the Department bears the burden of establishing which subsection he was convicted under, to the extent that that document does not meet the requisite demand for clarity that the Supreme Court has said is required of Shepardment documents, then it leaves the entirety of the statute open for interpretation. I mean, I don't want to hold you up on this, because I see you're over time, but this seems like it would be a, this is like a minor road bump on to getting on to your main argument, but you're disputing that the indictment clarified whether he was indicted for mistreating a prisoner or a parolee, and it says nothing about that. It says nothing about that he acted in that level of authority, he had that position or anything. So there's, of course, it's crystal clear that he must have been indicted under the only other part of the statute that remained. Your Honor, if I could point you to the amendment indictment, it actually contains phrasing that was stripped out of the statute entirely. Right, but it doesn't contain what you need it to contain for it to be fall under Roman at 2 or 3. Well, with all due respect, Your Honor, it isn't our burden in this particular instance to prove which subsection he was convicted under, it's the government's, and I would submit that that document simply does not establish which subsection. All right. Thank you, sir. Thank you. Mr. Ramnitz? I please report, Your Honor, it's Tim Ramnitz on behalf of the United States Attorney General. The agency properly found in this case that both the petitioner's Virginia convictions for electronic solicitation of a minor under 15 and for attempted sexual battery constitute crimes of either moral turpitude or CMT's, running in removable from the United States. When you're talking about the men's ray in a C.I.A. and the men's ray in a C.I.A., CMT, do you agree or don't you or what that something more than simple negligence is required? Well, the agency did two things. The Borden case says with respect to a crime of violence that recklessness will not suffice, but should we carry that over into the men's ray in the immigration area? So what we're talking about is the immensity of Part 2. The B.A. decision was issued in 2020. No, but I need to get a direct answer to my question. Yes, that's the direct answer. We should carry it over. I think you should carry that over, but you really don't have to reach that issue in this case because this case looks squarely fits under immensity of Part 1. Well, it probably doesn't matter for purposes of this case because as I earlier pointed out, the sexual solicitation requires a specific intent and you don't solicit negligence. And the Supreme Court in the Shaw case, you know, just because they said it a while back doesn't mean it's less than valid. There's a reason to believe is knowledge. That's knowingly. So you've got a men's ray. As I understand your argument, it's well above negligence. And with the attempted sexual battery, it's hard to see how Congress would exclude the word attempt. And it says, you know, there are all these discussions about what is meant by force, intimidation, threat, and ruse. Those are not the kind of things that one does just negligently. They're carried out with an effort to completely demean and dehumanize another human being. Exactly. So what we wanted to do with that briefing was give the court the easiest way to affirm this case, which would be under the fact that this electronic solicitation statute requires the defendant to have intended to sexually solicit a child. That's what the Supreme Court said in Kilpatrick. So what the petitioner doesn't have is any case where it's been applied to negligent conduct. The best he can come up with is dicta from a lower court decision, which says perhaps it's an open question. That doesn't mean it's ever been applied in this case. And, in fact, when you get to the next case in line, the Kilpatrick case in the Supreme Court, the briefing's available in Westlaw. If you look at the briefing by both parties in this case, they both agreed the lower court was even wrong to even opine that because base law is already established in Virginia that you have to prove that attempt to sexually solicit a child. The reason to believe language is there is because it comes up over and over again. And when there's defense in this statute, it's always the person saying, I was role-playing with an adult. I never meant to sexually solicit a child. It was an adult. That's what you see in Kilpatrick. That's what you see in Stoltz. That's the only defense really available to this statute. And so what the courts always find is that this reason to believe means we don't have a smoking gun. Maybe it's always texts and emails in this day and age. But everything points that you had reason to believe. We believe you intended to sexually solicit a child. So the actus reus here would be the attempted sexual battery. The actus reus would be the attempt, making the attempt. Okay. So for sexual battery. Yeah. And then the mens rea would be the forced intimidation threat. Correct. That would be the intention. So you have both the mens rea and the actus reus. And I've never been completely sure to what degree criminal law concepts should be carried over to the immigration field because the board says, you know, simply has a culpable mental state and a depraved and debasement of a moral norm. Now, that doesn't really tell me whether the normal criminal law doctrine with respect to mens rea and actus reus carries over in toto to the immigration field. I've always felt, well, you know, to be safe, we should maybe assume, arguendo, that it does. And what you're arguing, as I understand it, is that the solicitation, I guess, is both the actus reus and the mens rea, that it can't be accomplished negligently, that it is morally depraved. And you can go through the same analysis with the attempted sexual battery. But it is interesting to me the degree to which we should carry over those criminal law decisions into the immigration field. I've always kind of done it because it seems to me to be on the safe side, what the Supreme Court has done. But here you see, unlike in the appeals from the Supreme Court, we actually have the convictions in front of us. When you have a director field in the criminal area, you know, you're looking at the conviction before it's time, which it's not until the appellate court looks at it. But here we already have the convictions in which I would assume that all the Supreme Court's observations about mens rea and actus reus and everything else have been observed and it hasn't been overturned either on direct appeal or collaterally. So I don't know. I mean, maybe you can help me out. I don't know that we need to carry over the full panoply of criminal law where the conviction has already been obtained. But on the other hand, if we do need to carry it over in toto, it certainly applies here. Maybe you can help me out with that. When I think of carrying it over, it's unfortunately the categorical approach. Speak up, please. When I think of carrying over, it's unfortunately the categorical approach which you see in all these criminal cases in the immigration context. So we have state offenses which you have to match to a federal offense for immigration consequences to kick in. So that's why we're carrying over is we're asking what conduct does the state cover does it meet that federal conduct. And so when it comes to moral turpitude, it's a more nebulous question as courts have struggled with. There's been plenty of void for vagueness challenges shot down by courts' appeals routinely over the last couple of years. But these challenges still come up because in carrying over to what's a moral turpitude crime, that's a little more difficult because first you have to find out what's categorically covered by the statute here that you would carry over what the state says the mens rea is and what the state says is the actus res. And then you look at what the board has said is required for a mens rea and actus res for a CIMT. And the actus res, in particular, something that's reprehensible is always going to be nebulous and that's why the courts say to defer to the board in that case because the board will determine what's morally turpidness. So that's what's being carried over. It's no different than an aggravated felony categorical analysis, but we just have that more nebulous concept of what is a moral turpidness crime. I guess the question though is, is it possible for something, for an act to be done negligently but yet still be morally turpidness? We've said before our most recent decisions that generally we don't, you know, generally we don't think of negligent conduct as being morally turpidness, but we didn't draw a bright line on that because of this concern perhaps about equating exactly, you know, here's the, what are standards in the criminal law and it's, as you said, it's a little different than what it means to be morally turpidness. Exactly, and so in our briefing that's why we argued the point that this is not an ordinary negligence case. That makes the case easy because then it fits under this longstanding definition of moral turpidness, which has been up and down in this court whether or not moral turpidness includes negligence crimes. This statute's not that. You can't be convicted under this statute. The judge actually put it better than I did, and I, what I'm asking, I guess, if I can boil it down, is can tortious conduct be morally turpidness? The kind of thing that you would have a jury verdict on, I'd just say a straightforward tort because, you know, if you're sloppy or negligent about something, can that be morally turpidness? Not in the immigration context. What? Not in the immigration context. You have to have a criminal liability. So your answer is what, no? At the very minimum. A tort cannot be morally turpidness? You have to have a conviction for the immigration context. You must have a conviction for the immigration context. It can't just be tortious conduct. You have to have criminal conduct. Well, not all torts are negligent. What about an intentional tort? You might not have a conviction, but, you know, assault and battery and the like, they are tortious conduct. I mean, we have negligent torts and we have intentional torts. So if somebody is found guilty of an intentional tort, assault and battery or whatever, which is just one of several categories of intentional tort, why couldn't an intentional tort be morally turpidness even in the absence of a criminal conviction? I would say based on pure statutory language. Why shouldn't it be? Because the Immigration and Nationality Act requires a conviction. You have to have criminal liability. A court has to have found you guilty. So you can't have tortuous conduct for immigration removals. But I think it's a good point that we don't normally read in a negligence standard to criminal liability. It's pretty rare. And we're certainly not doing that here because, as Kilpatrick says, you have to have the intent to sexually solicit a child. And I'd also like to note that where this whole ordinary negligence argument comes from is Stoltz. So you can look up that briefing, too. It's on Westlaw. My assumption is the BIA only, is my assumption correct, that the BIA only moves a deportation on the basis of a CIMT when the CIMT says crime involving moral turpitude? Correct. Or you might, if you have an adjunct, become an adjunct teacher somewhere, you might pose these questions. I don't think we need to read them in this case. But it's always interested me. Unless there are more questions about the sexual assistance case. What's your position on the should, new or should have known standard from Jimenez-Cedillo? My position is that this case really fits under Part 1, which this court did affirm that part of the case. So before the published decision this court issued remanding it, it did note that when you have an intent to sexually solicit a child, that's been a CIMT for a long time, and expressed no disagreement with that part of Jimenez-Cedillo. And that's why we wanted to make that the easiest route for this case. But the board actually cites Jimenez-Cedillo 2017, which is Part 1. So that's what they're relying upon, is the intent to sexually solicit a child is CIMT. The immigration judge, though, relies on Part 2, which is the 2020 version after this court remanded. And our position is that we would defend that position as well. You can have a negligence standard for a statute that is a sex crime against children. Because this court wanted a better explanation from the board why it would make negligence the standard in those cases. And I think the board reasonably came back and explained to the court in the 2020 decision why it was doing that. It was saying these are sex offenses against children. The onus, we're going to put that, or the community census says the onus is on the adult, like in statutory rape crimes. As the Supreme Court explained in Escobar-Quintana, that those are sexual abuse for minor crimes when they're under 16. They just are. Now there's a difference that has to be a significant age range, if it's a 15 or 16 or 17-year-old. And that's what Jimenez-Cedillo Part 2 is explaining. We can have a negligence standard as long as there's a significant age difference, which in this statute is seven years. So it fits Jimenez-Cedillo Part 1, which is the parts that this court agreed with, and it fits Jimenez-Cedillo Part 2. So we don't have to get to the negligence part, because I don't think this statute, it does not cover negligent conduct. Every case that we've pointed to in our brief says in published decisions, you have to prove intent to sexually solicit a child. That's easily a CMT. Excuse me. On the attempted sexual battery, assume I agree or we agree with you on the, if you look in the indictment, this falls within the type of conduct that is nonconsensual. Does it matter that the board didn't say we're doing a modified categorical approach? I mean, what do we do with the fact that the board didn't address either a categorical or a modified categorical approach? Excuse me. The board addressed it categorically. What we wanted to offer the court was the modified version, because that's the easiest way. And courts don't defer to the board on divisibility questions. It's a pure question of law. You see that over and over in this court's law, too, where it says if it's divisibility, we decide that. You decide that as the Fourth Circuit. So even if they don't do it, we can do it without sending that back? Yes. You can do divisibility, and I don't think the petitioner can test that. Because we, do we have to, I know you have an argument that the power differential in a jail and a parole situation might in itself be enough to be a crime of moral turpitude. But if that's not successful, you have to go, do you have to go to the modified categorical approach for that particular crime to qualify? Yes. You see the immigration judge and the board both say all instances, even authoritative relationships, under this statute are CMTs. Right. This is kind of a new area. We haven't seen these prison guard relationships discussed very fulsomely by the board. So we want to make it easier. Divisibility makes this case clear-cut and easy. As petitioner has said in his motion for stay, subsection 1 is completely different than the other subsections in this case, 2 and 3, which is how the statute read at the time of his conviction. 2 and 3 are about these unbalanced relationships. It's easy. The indictment clearly says subsection 1. Subsection 1 is sexual touching against the will, not just against the will, by violent force or fraud. That's easily a CMT, and that's the easiest route for the court to affirm in this case. The only hesitancy, I guess, about the categorical approach is maybe these imbalances of power would in and of themselves qualify.  It would be a pretty dramatic statement to say an imbalance of power to a consensual sexual conduct somehow is a crime of moral turpitude. I agree. I think that would be. So when I looked at the briefing in this case, I thought that would be the best tact to take was divisibility for that reason. Right. You don't have to tackle that big question. The board did, but perhaps you want a more explanation of why it did that. The easiest way is that subsection 1 clearly, that's also clearly a CMT. Thank you, sir. Mr. Vila, you have some time for rebuttal. My colleague is especially tall. Even under subsection I, we would still maintain that the conduct there, the minimum conduct is not morally turpitudinous. An attempt to touch someone's clothed buttocks, even with the intent to sexually gratify oneself or another person, while it might be untoward, inappropriate, I think is a stretch for the government to say that that is so violently depraved that it shocks the public conscience. Do you agree that we can do the modified categorical approach ourselves since it's a question of law? Yes, Your Honor. We would concede that that, at the end of the day, is a de novo question. However, there may still be a Chenery issue there because ultimately the board here hung its hat on dicta for Mohammed and did not engage in any meaningful way in analyzing the statute. So I'm to date unsure, other than pointing to the dicta in Mohammed, what the board was referring to. I think it starts with a statutory analysis, albeit not very lengthy, and then gets to Mohammed. So, again, to the extent that the court is not prepared to analyze the conduct here under subsection 3 or 4, even under subsection 1 of the attempted sexual battery statute, that conduct, again, simply doesn't rise to the level of being morally turpitudinous. And I would point the court, for example, to a number of other states within the United States that don't even criminalize this kind of sexual touching. Texas, Florida, Mississippi, South Carolina, Ohio, a number of them don't criminalize touching in that specific area of the body. Others require actual... I'm not impressed to see how we would go at it other than categorically. I think I would be... I've been critical of the categorical approach in some instances, but I'm not sure here if we can require the board to delve into the particular circumstances of a particular case. It would add further delay to the immigration and deportation process, and the Supreme Court counseled us, and again, not to have these proceedings drag on and on and on. And this is one context, more so, I think, than the criminal process. But this is one context where the efficiency of the categorical approach is probably a good thing. Whether the categorical approach is good or bad, it's hard to answer that in a terribly abstract way. But here, it sure seems to me, I can't imagine the board's reaction. They're so backlogged. And if they were... These IJs and the board, they're overwhelmed with cases. And if we say, well, this is not a categorical matter, you have to look at the facts, underlying facts, they would go crazy. I mean, they would go... Certainly, Your Honor, I think that part of the rationale for the categorical approach is so that agencies like the BIA are not relitigating, essentially, a small criminal trial in order to determine what happened. But again, that focuses the inquiry on the statute, what the minimum conduct is under the statute, rather than the facts particular to any individual that is before the board in that instance. And so, again, I would like to also point out that the government relies on this because, again, the BIA failed to take up the proper analysis here, relies on this idea from this 1891 Supreme Court case that reason to believe is synonymous with knowledge. But as we know under the canons of statutory construction that have been interpreted over and over and over again in the last 150 years since that decision, that that would essentially read that phrase out of the statute entirely. Because if knowledge is synonymous with reason to believe, then you could just have knowledge in the statute. But the statute says no or reason to believe. And so we posit once again that that standard is far lower than knowledge and is one of criminal negligence. And finally, Your Honors, we would just like to ask the court that if it finds either or both of his convictions are not crimes involving moral turpitude, that it order Mr. Gomez-Rutolo's safe return to the United States. All right. Thank you. Mr. Melo, I know that you're court appointed, and I really want to express the appreciation of the court for your services. And it's obvious to me that you looked into this case diligently, and we really respect and appreciate that. Thank you, Your Honor. I much appreciate it. And we thank you, too. Sometimes we thank the good attorneys who are court appointed, and the other side says, well, what about me? Didn't I do a good job? You did. You did a fine job. All right. We will adjourn court until 930 tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Allison J. Rushing